**COLLINS v. THORNTON.**

No. 3041.

Court of Civil Appeals of Texas.

Eastland.

Nov. 6, 1953.

Rehearing Denied Dec. 11, 1953.

Ratliff & Ratliff, Haskell, for appellant.

Tom Davis, Haskell, Marvin C. Culbertson, Vernon, for appellee.

COLLINGS, Justice.

K. H. Thornton brought this suit against Jack B. Collins to recover damages for the destruction of the unharvested remainder of a cotton crop on approximately 474 acres of land which Thornton had rented for the year 1951. Thornton alleged that about July 1, 1950, he and J. M. Collins, father of defendant Jack B. Collins, entered into an oral rental contract whereby Thornton rented for the years 1950–51 certain lands in Haskell County, Texas, for grain and row crops; that the land was sowed in wheat in the summer and fall of 1950 but did not come up and by agreement with J. M. Collins, Thornton prepared the land for planting cotton in 1951; that J. M. Collins died in the spring of 1951 and by agreement and with the consent of Jack B. Collins, who was one of the owners of the land and who was, after the death of his father, in charge thereof, 474 acres of cotton were planted and made ready for harvesting; that Thornton had gathered a portion of the crop before December 31, 1951, but that the remainder of the crop was not ready for harvesting until the latter part of the month; that on December 31, 1951, he had a sufficient number of hands to finish gathering the crop within a reasonable time and that Jack B. Collins had knowledge of such fact; that on January 1, 1952, Jack B. Collins turned his cattle into the field and a few days later entered and began plowing up the cotton.

Thornton alleged that under the law of emblements he had the right to enter upon the premises after the expiration of his rental term for the purpose of harvesting and saving the cotton crop. He further alleged that Jack B. Collins had acted willfully and maliciously and that in addition to the actual damages of $3,002.27 claimed, that he was entitled to $10,000 as exemplary damages.

Jack B. Collins filed a general denial and a cross action for the sum of $457.73 which was admitted in Thornton's petition to be due Collins as rent.

The case was tried before a jury and based upon its answers to special issues submitted, judgment was rendered in favor of Thornton for $536.02 after giving Collins credit for the $457.73 which Thornton still owed as rent. Jack B. Collins has appealed.

The evidence showed that Thornton rented the farm from J. M. Collins, father of appellant, for the year 1951; that he had also rented the place for the years 1949 and 1950; that he sowed it in wheat in the fall of 1949 and harvested it in the spring of 1950; that the wheat field contained 571 acres; that in 1950 he again rented the place from J. M. Collins for the year 1951 and again sowed it in wheat; that J. M. Collins died in the spring of 1951 and his son, appellant Jack B. Collins, returned to Haskell and took over the supervision of the farm; that it was dry in the early spring of 1951 and the rains came too late for the wheat crop; that Thornton was of the opinion that it was advisable to plow up the wheat; that he talked to Jack B. Collins about the matter and it was agreed between them that Thornton should plow up the wheat and plant cotton; that Thorn-

ton then planted about 471 acres of the land in cotton; that he worked the cotton during the spring and summer of 1951 and poisoned it for insects during the first part of September; that the cotton was late and he was unable to start harvesting until November, 1951; that he had to wait until after the frost and freeze for most of it to open; that by January 1, 1952, he had "pulled" over most of the crop, all but about 25 or 30 acres; that on account of the lateness of the crop, bad weather and the shortage of pickers, he was unable to gather the remaining part of the crop before January 1, 1952; that he did secure workers and started them to work on January 5, 1952, and harvested some of the cotton; that he had sufficient hands and could have finished gathering the crop within a reasonable time which fact was known to appellant; that regardless of such knowledge, Jack B. Collins turned his cows into the field on January 1, 1952, and on January 5th or 6th, began plowing up the cotton with two tractors; that he plowed across the field in such manner that the pickers had to move out and Thornton had to abandon the crop.

The determination by the trial court of the amount of damages suffered by Thornton by reason of the loss of the remaining portion of his crop is not questioned. One of the findings of the jury was that there was no express agreement as to the date of termination of the rental contract in question. The sole point presented on this appeal by appellant Jack B. Collins is that "the trial court erred in overruling and in not granting the appellant's motion that the jury be instructed to return a verdict in favor of the appellant and against the appellee, as to the cause of action asserted by appellee, and against appellee and in favor of appellant on his cross action for the sum of $457.73, the amount admitted by the appellee to be owing to the appellant as rentals for the cotton crop for the year 1951."

It is urged by appellant that Thornton, in his pleadings, relied upon a contract for the land in question for the years 1950 and 1951 and that Thornton's cause of action was based upon the theory that under the law of emblements, he as the tenant for the year 1951, had the right to enter upon the premises after the expiration of his rental term for the purpose of harvesting and saving his crop; that under the terms of said contract for 1951, Thornton's rental contract or the term thereof expired as of December 31, 1951; that the contract was, therefore, not one of uncertain duration, but was certain, in that being for the year 1951 as pleaded by Thornton, it expired December 31, 1951, and that, therefore, appellant Jack B. Collins was entitled to the possession of the premises leased on and after January 1, 1952, and was not and could not be liable in damages for turning his stock into the cotton field and plowing same after January 1, 1952; that he was entitled to the possession of the land leased on and after January 1, 1952.

█ The general rule is that where a lease of land is for a definite term and there is a fixed and certain date of expiration, when the tenant is required to deliver up the land, and the tenant, because of bad weather or other unusual circumstances, is unable to gather all of his crop before the expiration of the lease, he is not entitled to an uninterrupted possession of the land after the expiration of the lease until the crop is gathered. Miller v. Gray, 136 Tex. 196, 149 S.W.2d 582, 141 A.L.R. page 1237; Lewis v. Pittman, Tex.Civ.App., 191 S.W.2d 691.

█ The rule, however, does not apply to the facts of this case. Here the jury found that there was no express agreement as to the date set for termination of the contract. If appellee's pleadings and evidence support the jury finding, the judgment should be affirmed. In our opinion, the finding does have such support. In the above cited cases, the written rental contracts each provided a specific date for termination of the lease and that the lessee would, on the named expiration date, deliver possession of the land to the owner. In this case the oral supplemental rental agreement for planting cotton provided no specific date for termination. The allega-

tion and proof that the original rental agreement was for the year 1951 does not, under all the other facts and circumstances of the case, require the interpretation that the date of termination of the lease and delivery of the land was fixed and certain. It is to be noted that the cotton crop was not planted under the original rental agreement between J. M. Collins, deceased, and appellee Thornton, which seemed to contemplate the planting of other crops on the land. We are not required to pass upon what the rights of the parties would have been if appellee had planted the cotton crop under the original agreement without the specific consent and agreement of the land owner. The pleadings and evidence in this case show that after it became apparent in the spring of 1951 that the wheat crop would not mature, appellee Thornton and appellant Jack B. Collins agreed that the cotton crop in question should be planted. Although there is no evidence that the parties then discussed the date of termination of the contract, in the absence of any indication to the contrary, it is not unreasonable to assume that the parties intended that appellee Thornton would have the right to harvest his crop within the time reasonably necessary therefor, even if the time extended beyond the end of the calendar year. Under such facts and circumstances, it is our opinion that the date of termination of the lease was not fixed and certain and that the pleadings and evidence support the jury finding that there was no express agreement as to the date for the termination of said contract.

There was evidence to the effect that covering a period of about fifteen years in Haskell County, some cotton gins continued in operation up until the latter part of January or middle of February; that from 60% to 75% of the farmers in the county were still ginning cotton after the first of January, and that it was customary for the tenant to be permitted to gather his crop within a reasonable time after the first of January if it was necessary.

In the case of Bowles v. Driver, Tex. Civ.App., 112 S.W. 440, it was held that proof of a custom permitting a tenant to gather the remainder of a cotton crop after the end of the calendar year was not at variance with an ordinary rental contract for such calendar year where the rent to be paid was a part of the crop to be planted and produced. In the case of Miller v. Gray, supra [136 Tex. 196, 149 S.W.2d 584], Chief Justice Alexander, in discussing the above case, said:

"If there was no express agreement as to when his lease would terminate, then the holding of that court can be sustained on the theory that the contract contemplated that the tenant should produce and gather a crop, and under the local custom the tenant could be allowed a reasonable time, under suitable weather conditions, after maturity of the crops in which to gather same."

In 141 A.L.R., page 1245, authorities are cited for the proposition that as a general rule, when a lease, expressly or by implication, recognizes the right of a tenant to sow in the last year of his term, the tenant. has a right to harvest the way-going crop at the expiration of his lease, where the lease is silent as to who is entitled to such crop.

As already indicated, we are of the opinion that the finding of the jury that there was no express agreement as to the date of termination of the rental contract in question, is supported by appellee's pleadings and by the evidence. The court did not err in refusing appellant's motion for an instructed verdict and the point is overruled.

The judgment of the trial court is affirmed.